**SIGNED THIS: July 05, 2005**

_____
**LARRY LESSEN
UNITED STATES BANKRUPTCY JUDGE**
_____

UNITED STATES BANKRUPTCY COURT

CENTRAL DISTRICT OF ILLINOIS

| | |
|---|---|
| In Re ) | |
| ) | In Bankruptcy |
| TOMASITA KETCHAM, ) | |
| ) | Case No. 04-73356 |
| Debtor. ) | |
| _____ ) | |
| ) | |
| MORGAN COUNTY HOUSING ) | |
| AUTHORITY, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Adversary No. 04-7183 |
| ) | |
| TOMASITA KETCHAM, ) | |
| ) | |
| Defendant. ) | |

## O P I N I O N

The issue before the Court is whether the Debtor fraudulently obtained Section 8 housing assistance payments which would render a debt nondischargeable pursuant to 11 U.S.C. § 523(a)(2)(A).

-1-

The Plaintiff, Morgan County Housing Authority, provides rental assistance to low-income individuals pursuant to the U.S. Department of Housing and Urban Development Section 8 Tenant-Based Assistance Program. The Debtor, Tomasita Ketcham, applied for Section 8 housing benefits on May 5, 1999. She indicated on her pre-application form that there were four persons in her household - herself, Gregory, a 13 year-old student at the Illinois School for the Vision Impaired, Desiarea, an 11 year-old student at Franklin, and Savannah, a seven year-old student at Franklin. The Debtor indicated that she had been separated from her husband, Randy Ketcham, for 2½ months. The Debtor also indicated that she had applied for SSI for Gregory.

The Plaintiff determined that the Debtor was eligible to participate in the Section 8 Rental Voucher Program. On November 8, 1999, the Debtor signed a voucher, which is a contract between the Debtor and the Plaintiff. The voucher requires the Debtor to follow the landlord's lease and to promptly notify the Plaintiff of any changes in family income or composition. (The Plaintiff construes "promptly" to mean within two weeks.) On the same date, the Debtor was orally warned about the consequences of fraud.

On December 20, 1999, the Debtor signed a lease with the landlord for a three-bedroom unit located at 329 North Clay in Jacksonville, Illinois. The monthly rent was set at $250, with the Plaintiff paying $320 and the Debtor paying $30. According to the lease, the household consisted of Tomasita, Gregory, Desirie (sic) and Savannah Ketcham.

Once a tenant gets into the Section 8 program, the tenant must be re-certified on an annual basis at lease renewal time. The Debtor was sent a verification letter each fall which required her to make an appointment "for evaluation of household income and family composition". The Debtor was instructed to bring "[v]erification of ALL household income" including "W2's, pay stubs, child support, alimony, Social Security, [and] SSI". (emphasis in original).

The Debtor filled out a Personal Declaration each year at lease renewal time. Each declaration showed the household composition to be Tomasita, Gregory, Desiarea, and Savannah Ketcham. The total household income, including SSI, was listed as Tomasita's income from Pathway or the Visiting Nurses Association. There is no indication that anyone in the household was receiving SSI. The Debtor signed each declaration swearing that it was true and promising to report any changes immediately.

In January, 2004, the Plaintiff discovered that Gregory Ketcham was receiving SSI of $564 per month and that his eligibility date for SSI was March, 2001. The records showed that he started receiving SSI in the summer of 2002. The Debtor did not report the SSI income to the Plaintiff.

The Plaintiff determined that the Debtor's failure to report the SSI income was a serious violation of the Section 8 program because it allowed her to get more housing assistance than she was entitled to. The Plaintiff calculated that the Debtor received overpayments of $1,956 in 2002 and $1,826 in 2003. These

calculations were based on the Debtor having three children in the home.  On January 21, 2004, the Debtor was notified that she owed the Plaintiff $3,782 and that she needed to start making monthly payments of $50 beginning in February until the debt was paid in full.  The Debtor made a $200 payment in February and a $50 payment in March.  She made no further payments on this debt.

The Debtor filed a petition pursuant to Chapter 7 of the Bankruptcy Code on July 29, 2004.  The Plaintiff filed a timely complaint to determine dischargeability of debt pursuant to 11 U.S.C. § 523(a)(2)(A).  The Plaintiff alleges that the Debtor provided false information to the Plaintiff regarding her family income which caused the Plaintiff to provide her with a monthly housing assistance payment greatly in excess of that to which she was entitled based on her true family income.  The Debtor denies any intent to defraud.

Section 523(a)(2)(A) of the Bankruptcy Code states as follows:

>    (a)  A discharge under section 727, 1141, 1228(a), 1228(b), or 1328(b) of this title does not discharge an individual debtor from any debt-
>
>        (2)  for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by-
>
>            (A)  false pretenses, a false representation, or actual fraud(.)

"Actual fraud" precluding a discharge in bankruptcy consists of any deceit, artifice, trick or design, involving direct and active operation of the mind used to circumvent or cheat another; something said, done or omitted with a design of perpetrating what

-4-

is known to be cheat or deception. In re Schmidt, 70 B.R. 634 (Bankr. N.D. Ind. 1986). The Seventh Circuit Court of Appeals recently defined the term "fraud":

> Fraud is a generic term, which embraces all the multifarious means which human ingenuity can devise and which are resorted to by one individual to gain an advantage over another by false suggestions or by the suppression of truth. No definite and invariable rule can be laid down as a general proposition defining fraud, and it includes all surprise, trick, cunning, dissembling, and any unfair way by which another is cheated.

McClellan v. Cantrell, 217 F.3d 890, 893 (7th Cir. 2000) (citation omitted).

The existence of fraud for nondischargeability purposes may be inferred if the totality of circumstances presents a picture of deceptive conduct by the debtor which indicates that he or she intended to deceive or cheat the creditor. In re Schmidt, *supra*. A breach of a contract or a failure to perform some promised act, by itself, will not render a debt nondischargeable under § 523(a)(2)(A), although entering into a contract or promising an act with no intention of performance may support a finding of nondischargeability. In re Faulk, 69 B.R. 743, 750 (Bankr. N.D. Ind. 1986).

A party seeking to establish an exception to discharge of a debt bears the burden of proof. In re Harasymiw, 895 F.2d 1170, 1172 (7th Cir. 1990). To prevail, that party must prove the existence of fraud by a preponderance of the evidence. Grogan v. Garner, 498 U.S. 279, 111 S.Ct. 654 (1991). Exceptions to discharge are to be construed strictly against a creditor and

-5-

liberally in favor of a debtor. In re Scarlata, 979 F.2d 521, 524 (7th Cir. 1992), *quoting* In re Zarzynski, 771 F.2d 304, 306 (7th Cir. 1985).

A debtor's failure to disclose a change in household income constitutes grounds for finding the overpayment of public assistance benefits to be nondischargeable under § 523(a)(2)(A). In re Gadus, 145 B.R. 235, 238 (Bankr. N.D. Ohio 992); In re Hatcher, 111 B.R. 696, 700 (Bankr. N.D. Ill. 1990); In re Berry, 3 B.R. 430 (Bankr. D. Or. 1980). *See* In re Jones, 37 B.R. 195 (Bankr. E.D. Mo. 1984). As the court stated in Hatcher:

> While the Debtor's original representation that she was unemployed apparently was true, it became false two months later. By continuing to accept payments, each acceptance was tantamount to an intentional false representation in writing that she remained unemployed. The agency reasonably relied on those representations. Where a debtor receiving benefits fails to inform a welfare agency of new employment, but accepts and thereby fraudulently continues to receive benefits, and the agency reasonably relies on debtor's original reported unemployed status in continuing benefits, the debt to the agency resulting from such improperly paid benefits is nondischargeable under 11 U.S.C. § 523(a)(2)(A).

111 B.R. *at* 700.

In this case, the Debtor's original representation regarding her household income was true, but it became false in 2002 when Gregory started receiving SSI benefits. The Debtor's continuing acceptance of the housing assistance payments constituted an intentional false representation that she was the only person in the household who received income. The Plaintiff justifiably relied on these representations.

The Debtor testified that Gregory was born blind. He is a

-6-

student at the school for the blind. Students in Jacksonville can live at home and go to the school or they can live at the school. Gregory chose to live at the school and only came home on weekends. Gregory started getting SSI when he was 13. The SSI checks went to the Debtor, but she testified that she spent the money on Gregory. Gregory started to take care of his own money when he turned 17.

The Debtor's defense that she did not provide false information to the Plaintiff is not well-taken. While her original representation was true, she began to misrepresent her household income after Gregory started receiving SSI. She had a clear duty to disclose all household income, including SSI, and she did not do it.

The Debtor argued that Gregory's SSI should not be considered part of the household income because he was living at the school. The problem with this argument is that the Debtor consistently listed Gregory as a member of her household in all of the documents she signed and delivered to the Plaintiff. The Debtor cannot have it both ways; she cannot claim Gregory as a member of her household in order to get housing benefits and then deny that he is a member of the household in order to exclude his income. The Court finds that Gregory was a member of the Debtor's household, and that the Debtor defrauded the Plaintiff when she failed to disclose Gregory's SSI income.

For the foregoing reasons, the Court finds that improper housing assistance overpayments in the amount of $3,532 are nondischargeable pursuant to 11 U.S.C. 523(a)(2)(A).

-7-

This Opinion is to serve as Findings of Fact and Conclusions of Law pursuant to Rule 7052 of the Rules of Bankruptcy Procedure. See written Order.

###